**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

_____

**EVELYN KAUFFMAN and**
**DENNIS ROCHELEAU,**
                     **Plaintiffs,**

**v.**                                                            **Case No. 14CV1358**

**GENERAL ELECTRIC COMPANY,**
                     **Defendant.**
_____

## DECISION AND ORDER

### I. BACKGROUND

At age 65, most Americans become eligible for Medicare, and Medicare becomes their primary source of health insurance. However, Medicare does not cover all health-related expenses. For years, defendant General Electric Company ("GE") offered its over-65 retirees several health insurance plans (the "Plans") which supplement Medicare. Defendant recently announced that it intended to terminate these Plans. Plaintiffs Evelyn Kaufman and Dennis Rochleau, retired salaried employees of GE, bring this suit contesting the termination of the Plans. Their claims arise out of representations that defendant made in a handbook summarizing the Plans. In July 2012, defendant revised and reissued the handbook and, in Section 5.4, entitled "Can the Plans Be Changed, Replaced or Terminated?," stated that:

> GE expects and intends to continue the GE Medicare Benefit Plans described in this handbook indefinitely, but reserves the right to terminate, amend or replace the programs or plans, in whole or in part (subject to applicable contractual requirements), at any time and for any reason, by action of the Board of Directors of General Electric Company or such persons as it may designate.
>
> A decision to terminate, amend or replace a plan may be due to changes in federal or state laws governing qualified retirement welfare benefits, the requirements of the

Internal Revenue Service, ERISA or any other reason.

Compl. Ex. A at 50 (ECF No. 1-1).

Two months later, in September 2012, defendant announced that the Plans would no longer cover retirees who had not turned 65 by January 1, 2015, such as plaintiff Kaufman, and that as of that date, retirees who had reached 65 such as plaintiff Rochleau would have to assume half the cost of certain Plan benefits. In September 2014, defendant followed up these statements with an announcement that, effective January 1, 2015, it would terminate the Plans altogether and give retirees the option of purchasing supplemental coverage through an exchange. Retirees over 65 would receive a $1000.00 subsidy. Plaintiffs claim that by terminating the Plans defendant breached the representation made in the handbook that it "expects and intends to continue . . . the Plans . . . indefinitely," and that such breach violated the Employee Retirement Security Act ("ERISA"). Plaintiffs bring claims for breach of obligation and breach of fiduciary duty.

## II. PRELIMINARY INJUNCTION STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain a preliminary injunction, plaintiffs must first make a threshold showing that they (1) have a likelihood of success on the merits, (2) have no adequate remedy at law, and (3) will suffer irreparable harm if a preliminary injunction is denied. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). If plaintiffs make this showing, I must balance the irreparable harm that plaintiffs will suffer without injunctive relief with the harm defendants will suffer if the preliminary

injunction is granted and consider whether a preliminary injunction will harm the public interest. *Id.* I use a sliding scale to assess the balance of harms; the greater the likelihood of success on the merits, the less harm the injunction must prevent in order for preliminary relief to be warranted. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

### III. LIKELIHOOD OF SUCCESS ON THE MERITS

**A.  Breach of Obligation Claim**

A participant in a plan may bring an action under ERISA to (1) "recover benefits due [,] . . . to enforce his rights under the terms of the plan, or to clarify his rights to future benefits . . ." 29 U.S.C. § 1132(a)(1)(B); (2) "enjoin any act or practice which violates any provision of . . . the terms of the plan or . . . to enforce any provisions of . . . the terms of the plan." 29 U.S.C. § 1132(a)(3); and (3) remedy on behalf of a plan "breaches [of] any of the responsibilities, obligations, or duties imposed upon fiduciaries by [ERISA]" in order to "make good to such plan any loses to the plan resulting from each such breach, and to restore to such plan any profits . . . which have been made through use of assets of the plan." 29 U.S.C. §§ 1132(a)(2), 1109. A participant bringing the third type of claim may also obtain such "other equitable or remedial relief as the court may deem appropriate, including removal of [a] fiduciary." *Id.* The first two types of actions, under §§ 1132(a)(1)(B) and (a)(3) respectively, involve participants suing on behalf of themselves. *See LuRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008). The third type of action, under § 1132(a)(2), involves participants suing on behalf of a plan and seeking relief directed to the plan. *Id.*

The crux of plaintiffs' breach of obligation claim is that when defendant stated in its

3

handbook that it expected and intended to continue the Plans indefinitely, it assumed an obligation to make its best effort to continue the Plans, an effort at least equivalent to its past efforts; and when it cut back Plan coverage and subsequently terminated the Plans, it breached this obligation. Plaintiffs contend that they can bring this claim on behalf of the Plans under § 1132(a)(2). Section 1132(a)(2), however, only authorizes participants to bring claims on behalf of a plan to recover losses resulting from breaches of obligations "imposed on fiduciaries by this subchapter." § 1109(a); *see also LaRue*, 552 U.S. at 253 (stating that § 1132(a)(2) "authorizes . . . plan participants . . . to bring actions on behalf of a plan to recover for violations of the . . . statutory duties imposed on fiduciaries"). Plaintiffs' breach of obligation claim does not allege a violation of a statutorily imposed duty or obligation but rather a breach of a contractual obligation assumed by defendant based on the language it employed in the handbook. Thus, plaintiffs' breach of obligation claim on behalf of the Plans is unlikely to succeed.

Plaintiffs' breach of obligation claim may fare better as a participant's claim under § 1132(a)(1)(B) and/or §1132(a)(3). Citing *Vallone v. CNA Fin. Corp.*, 375 F.3d 623 (7th Cir. 2004) and *Sullivan v. CUNA Mut. Ins. Soc'y*, 649 F.3d 553 (7th Cir. 2011), however, defendant argues that the claim fails because defendant reserved the right to modify or terminate the Plans at any time and for any reason. But *Vallone* and *Sullivan* dealt with reservation of rights clauses in the context of participant assertions that benefits under a plan had vested and that the employer could never terminate benefits. *See Vallone*, 375 F.3d at 634 (stating that a representation of "lifetime" benefits did "not operate to vest that benefit" when the document also included a reservation of rights clause); *Sullivan*, 649

4

F.3d at 556–57 (stating that an employer's statement that it "expects the Plan to be permanent" did not create vested benefits because the document also included a reservation of rights clause). In the present case, however, plaintiffs do not contend that the expects and intends language caused the Plan benefits to vest such that defendant can never terminate them or that the language is irreconcilable with the reservation of rights clause. Rather, plaintiffs argue that the provisions in the handbook can be harmonized; that the expects and intends language imposes a duty on defendant to continue to use its best efforts to maintain the Plans and that the reservation of rights language allows defendant to modify or terminate the Plans for reasons of the type listed in the handbook, i.e. "changes in federal law or state laws governing qualified retirement or welfare benefits [or] the requirements of the Internal Revenue Service, [or] ERISA." Compl. Ex. A. at 50.

In interpreting the language at issue, I attempt to reconcile conflicting language. *Diehl v. Twin Disc, Inc.*, 102 F.3d 301, 307 (7th Cir. 1996). Defendant's proffered interpretation, that the reservation of rights clause renders meaningless the expects and intends language, does not reconcile the provisions in the handbook. Plaintiffs' proposed interpretation, however, may well do so. A policy reason also supports plaintiffs' reading. Employers should not be encouraged to promise attractive benefits to employees and create the impression that such benefits will continue as long as certain circumstances do not occur and then eliminate the benefits even though such circumstances do not occur. It is important to note that defendant did not terminate the Plans for reasons of the type listed in the handbook, all of which involve a *force majeure,* something outside of defendant's control such as a change in the law. Rather, defendant appears to have

5

terminated the Plans to save money. As for the fact that the handbook language allows defendant to terminate the Plan for "any other reason," when a general term follows a more specific one, it "should be understood as a reference to subjects akin to the one with specific enumeration." *Norfolk & W. R.R. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 129 (1991). Thus, plaintiffs, as participants, have a better than negligible chance of succeeding on the merits of their breach of obligation claim. *See Omega Satellite Prods. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982).

**B. Breach of Fiduciary Duty Claim**

Plaintiffs' second claim is that the expects and intends language misrepresented defendant's actual intent with respect to the Plans, and that such misrepresentation constituted a breach of defendant's fiduciary duty. Plaintiffs again argue that they bring the claim on behalf of the Plans. As previously noted, a participant may bring an action under § 1132(a)(2) on behalf of a plan to recover losses resulting from the breach of a duty to a Plan by a fiduciary. And if the action succeeds, the fiduciary must:

> make good to such plan any losses to the plan . . . and . . . restore to such plan any profits of such fiduciary . . . and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a). Plaintiffs contend that defendant's misrepresentation harmed the Plans by undermining the participants' trust and confidence in them, by preventing the Plans from fulfilling their purpose of providing benefits to participants, and by making the Plans a party to fraud.

Most breach of fiduciary duty actions on behalf of Plans, however, involve situations in which a fiduciary has misappropriated plan funds, and the suit seeks to restore such

funds to the plan. Although § 1109 does not limit recoverable plan "losses" to monetary losses, the Supreme Court has emphasized that a breach of fiduciary duty claim on behalf of a plan must "identif[y] the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *LaRue,* 552 U.S. at 254. In *LuRue*, the Court noted that "'the crucible of congressional concern'" underlying §§ 1132(a)(2) and 1109 "'was misuse and mismanagement of plan assets by plan administrators'" and that § 1109 "protect[s] 'the financial integrity of the plan,' whereas other provisions specifically address claims for benefits." *Id.* (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 135, 141–42 (1985)); *see also Smith v. Med. Benefit Adm'rs Grp., Inc.,* 639 F.3d 277, 282 (7th Cir. 2011) (stating that although plaintiff claimed to be seeking relief on behalf of the plan, "his complaint is plainly aimed at obtaining relief for injuries that he rather than his plan suffered as a result."); *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 376 (5th Cir. 2008) (finding no evidence of loss to the plan in the context of misrepresentations made to participants).

In the present case, defendant's alleged misrepresentation may well have harmed participants in the Plans, but it is difficult to see how it harmed the Plans other than in an intangible way. I am aware of no precedent suggesting that such intangible harm is cognizable under § 1109, and although the Plans may have been indirect victims of the alleged fiduciary breach, the direct victims of any misrepresentations in the handbook were the participants, not the Plans. The nature of the preliminary relief sought by plaintiffs is to the same effect. Even at the preliminary injunction stage, the relief sought must address the alleged harm. *City of L.A. v. Lyons*, 461 U.S. 95 (1983). And, in the context of an § 1132(a)(2) action, any relief granted must inure "to the benefit of the plan as a whole.'"

7

*Smith*, 639 F.3d at 282. It is unclear how enjoining defendant from terminating the Plans would remedy the harm to the Plans that plaintiffs allege. Further, an alternative form of relief proposed by plaintiffs, requiring defendant to provide additional funding for participants' health care costs, seems geared more towards protecting participants from the increased costs of healthcare than undoing any harm to the Plans. Plaintiffs also argue that "the plan is the participants" (Tr. of Hr'g at 22) such that participant losses should be regarded as Plan losses, and that many participants, generally the oldest and the sickest, will be seriously harmed by defendant's action because they will have to pay more for less coverage than they received under the Plans. These arguments have emotional resonance, but, as discussed, the Supreme Court clearly distinguishes between participant losses and plan losses. Thus, plaintiffs are unlikely to succeed on their breach of fiduciary duty claim on behalf of the Plans.

Plaintiffs' breach of fiduciary duty claim may, however, lie under § 1132(a)(3), which authorizes actions by participants to enjoin violations "<u>of this subchapter</u> or terms of the plan." (emphasis added). Plaintiffs' claim appears to allege a violation of defendant's statutorily imposed duties to provide a summary plan description of Plan benefits to participants and to act solely in the interest of participants while doing so. 29 U.S.C. § 1022; 29 U.S.C. § 1104(a)(1). When an employer administers a plan, such as by providing participants with a summary plan description of the type contained in defendant's handbook, it acts as a fiduciary. *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1877 (2011); *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996) (concluding that an employer acted as a fiduciary when it "convey[ed] information about the likely future of plan benefits"). Further, the timing of the issuance of the handbook (July 2012) and the announcement of benefit

changes (September 2012) suggest that when it issued the handbook, defendant did not expect or intend to continue the Plans indefinitely. When acting as a fiduciary, an employer must act solely in the interest of participants, § 1104(a)(1), and misrepresenting an intent to continue benefits is not in participants' interest, *Varity Corp.*, 516 U.S. at 506 (stating that "deceiving a plan's beneficiaries . . . is not to act 'solely in the interest of the participants.'"). Thus, as participants, plaintiffs have a better than negligible chance of prevailing on a breach of fiduciary duty claim under § 1132(a)(3).

## IV. IRREPARABLE HARM

Plaintiffs' irreparable harm argument focuses on the harm to the Plans. As discussed, however, plaintiffs are unlikely to succeed on their claims on behalf of the Plans. Thus, to obtain a preliminary injunction, plaintiffs must establish irreparable harm to themselves. Plaintiffs concede that they cannot make such a showing. Thus, they are not entitled to preliminary relief.

## V. BALANCE OF HARMS

Even were I to reach the balancing of harms phase of the preliminary relief analysis, I would have concerns about the various forms of relief that plaintiffs suggest. The problem with requiring defendant to reintroduce Plan coverage and requiring participants to return to the Plans is that as of December 16, 2014, 53,000 participants had already switched to an exchange. Requiring participants to transfer back to the Plans might well be burdensome and confusing. Ordering defendant to continue the Plans and giving participants the option of returning is also problematic in that it would allow insurers offering Medigap policies on exchanges to discriminate against applicants based on their medical

9

history. Based on various federal rules, applicants for Medigap policies who have an option of returning to employer-provided coverage, e.g., the Plans, lose the benefit of a special enrollment period in which Medigap insurers cannot discriminate based on medical history. This could cause some applicants to be denied coverage or pay higher premiums. The problem with ordering defendant to increase the subsidy from $1000 to $1500 is that if defendant ultimately prevailed, it would be unable to recoup the money. Plaintiffs do not dispute that they would be unable to post a bond sufficient to hold defendant harmless. Finally, I could order defendant to notify participants of this litigation, direct them to maintain records of their medical expenses, and advise them that defendant might at the end of the case be required to reimburse them for certain expenses. This, however, would place a burden on many non-parties to track medical expenses for an uncertain length of time and would likely cause confusion about the status of the Plans. It is also unclear how I would determine which medical expenses qualify for reimbursement if plaintiffs are ultimately successful. In sum, I am finding it difficult to envision a satisfactory form of preliminary relief.

## VI. CONCLUSION

**THEREFORE, IT IS ORDERED** that plaintiffs' motion for a preliminary injunction (ECF No. 7) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 30th day of December, 2014.

                                                                                s/ Lynn Adelman
                                                                               _____
                                                                               LYNN ADELMAN
                                                                               District Judge