## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**EVELYN KAUFFMAN and DENNIS ROCHELEAU,**
    **Plaintiffs,**

  v.                Case No. 14-CV-1358

**GENERAL ELECTRIC COMPANY,**
    **Defendant.**

## DECISION AND ORDER

Evelyn Kauffman and Dennis Rocheleau bring this putative class action under the Employee Retirement Income Security Act (ERISA) against their former employer, General Electric Company (GE), based on its amendment and termination of Medicare supplement insurance plans that it once provided to eligible retirees. Plaintiffs initially brought two claims. First, they alleged that language in summary plan descriptions (SPDs) of the plans obliged GE to try to continue providing benefits under the plans absent a compelling reason to reduce or terminate them and that it breached that obligation when it amended and then terminated the plans. I dismissed this claim at the pleading stage because the terms of an SPD are not enforceable as the terms of a plan itself and plaintiffs did not allege that GE violated any plan terms. *See* Decision & Order, ECF No. 49, at 3 (citing *Cigna Corp. v. Amara*, 563 U.S. 421, 436 (2011)). Second, plaintiffs alleged that GE breached its fiduciary duties under ERISA with respect to the plans by misrepresenting its intent to continue the plans indefinitely absent a compelling reason to substantially amend or terminate them. Plaintiffs move for class certification on this claim, and both parties move for summary judgment.

# I. BACKGROUND

Before January 1, 2015, GE provided health insurance and prescription drug benefit plans to eligible retirees and their beneficiaries, which supplemented Medicare. Between 1992 and 2012, GE issued SPDs of these plans containing language like the following from § 5.4 of the July 2012 SPD:

> GE expects and intends to continue the GE Medicare Benefit Plans described in this handbook indefinitely, but reserves the right to terminate, amend or replace the programs or plans, in whole or in part (subject to applicable contractual requirements), at any time and for any reason, by action of the Board of Directors of General Electric Company or such persons as it may designate.
> A decision to terminate, amend or replace a plan may be due to changes in federal law or state laws governing qualified retirement or welfare benefits, the requirements of the Internal Revenue Service, ERISA or any other reason.

ECF No. 88-2, at 60. The first page of that SPD reads in relevant part as follows:

> While every attempt has been made to make this handbook as accurate as possible, full details of all provisions of each program or plan may not be included. Full details of each program or plan are contained in the official plan documents, which are available to you as described in Section 5.0, "Administrative Information," . . . . If a provision described in this handbook differs from the provisions of an applicable plan document, the plan document prevails.

*Id.* at 3. The SPD states that copies of official plan documents are available in person at GE's human resources offices, by phone, and by mail. *Id.* at 54. In relevant part, the official plan documents for each plan say, "This Plan may be amended, suspended, or terminated by the Board of Directors, in whole or in part, at any time without limitation . . . ." ECF No. 31-1, at 169; ECF No. 31-2, at 6; ECF No. 31-3, at 9.

In September 2012, the GE Board of Directors voted to amend the plans to eliminate future eligibility for individuals like plaintiff Evelyn Kauffman who would not be 65 years old, retired, and enrolled in the plans by January 1, 2015. Later that month, GE

2

provided written notice of the change to those affected. Two years later, in September 2014, the Board voted to terminate the plans effective January 1, 2015, and instead offer eligible retirees access to coverage on a private exchange, subsidize the purchase of plans on the exchange, and reimburse participants for some prescription drug costs. This change affected individuals like plaintiff Dennis Rocheleau who were already retired and enrolled in the plans before January 1, 2015. Within days, GE provided written notice of the change to those affected.

## II. DISCUSSION

ERISA requires plan administrators like GE to provide participants with "accurate and comprehensive" SPDs "written in a manner calculated to be understood by the average plan participant." ERISA § 102(a), 29 U.S.C. § 1022(a). Further, when a company acts as a plan administrator, as it does when issuing an SPD, it acts as a fiduciary, *Amara*, 563 U.S. at 437, and must act "solely in the interest of participants and beneficiaries" and "with the care, skill, prudence, and diligence . . . of a prudent man acting in a like capacity and familiar with such matters," ERISA § 404(a)(1)(A)–(B), 29 U.S.C. § 1104(a)(1)(A)–(B).

Plaintiffs argue that GE breached its fiduciary duties under ERISA with respect to the plans by issuing SPDs misrepresenting that it "expected and intended" to continue the plans indefinitely and that it would only amend or terminate them for a compelling reason like a change in federal or state law. "Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA." *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983) (citation omitted) (citing § 1104(a)(1)), *quoted in Varity Corp. v. Howe*, 516 U.S. 489,

3

506 (1996). Further, plaintiffs argue that, even if GE didn't lie, it breached its duty of care when it failed to take reasonable steps to ensure that the SPDs did not contain false or misleading information.[1]

GE argues that it did not intend to mislead or deceive anyone. It says that the SPDs clearly stated that its Board could amend or terminate the plans at any time for any reason and that, even if the SPDs were somehow ambiguous or confusing, they clearly stated that they were subordinate to the official plan documents, which were clear. Finally, according to GE, plaintiffs have not shown that its fiduciary conduct caused them redressable harm, so they lack standing to sue for breach of fiduciary duty. I will address this final point first because it implicates the court's jurisdiction.

Standing to sue is a constitutional requirement based on Article III's "'limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). To have standing to sue, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).

Each element of standing is "an indispensable part of the plaintiff's case . . . [that] must be supported in the same way as any other matter on which the plaintiff bears the

---

[1] Plaintiffs also argue that language in the SPDs bound GE to make its best efforts to continue to provide benefits under the plans absent a compelling reason to reduce or terminate them, and that when GE amended and then terminated the plans, it breached that obligation. As noted above, I dismissed virtually the same claim at the pleading stage. Plaintiffs now raise it as a matter of contract law, but the result is the same because the terms of an SPD are not legally binding or enforceable as the terms of a plan itself. *Amara*, 563 U.S. at 436.

burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, although plaintiffs "adequately alleged an injury for purposes of standing," they must now "submit[] adequate evidence of injury . . . to survive a motion for summary judgment." *Diedrich v. Ocwen Loan Servicing, LLC*, 839 F.3d 583, 591 (7th Cir. 2016). In other words, plaintiffs must put forth evidence, taken as true, sufficient to demonstrate not only that they were injured and that GE is responsible for their injuries but that their injuries were caused by GE's breach of its fiduciary duties under ERISA with respect to the plans and that there is an available remedy likely to redress those injuries. *See id.*

Plaintiffs argue that they have standing to sue based on a host of injuries, but most of their purported injuries do not amount to injury in fact. An injury in fact is "an invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, that is both concrete and particularized, *Spokeo*, 136 S. Ct. at 1548–50. A concrete injury is real and actual or imminent, not abstract, conjectural, or hypothetical. *See id.* at 1548. A particularized injury "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

First, plaintiffs argue that GE deprived them of their rights under ERISA to honest fiduciary oversight and service and to accurate SPDs, Pls.' Mem., ECF No. 86, at 15; Pls.' Mem., ECF No. 80, at 13; *see* §§ 1022(a), 1104(a)(1), but the mere deprivation of a statutory right, "divorced from any concrete harm," is insufficient to satisfy the injury-in-fact requirement of standing, *Spokeo*, 136 S. Ct. at 1549. Accordingly, a plaintiff seeking relief for a breach of fiduciary duty under ERISA must show not only "'that the defendant breached its fiduciary duty'" but "'that the breach *resulted in harm* to the plaintiff.'" *Killian v. Concert Health Plan*, 742 F.3d 651, 658 (7th Cir. 2013) (emphasis

5

added) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)); *see Amara*, 563 U.S. at 432, 443. That a plaintiff seeking relief for a breach of fiduciary duty under ERISA must show harm resulting from the breach is consistent with tort law and recent opinions from other circuit courts of appeals. *See, e.g.*, Restatement (First) of Torts § 874 (stating that a fiduciary is liable "for harm resulting from a breach of duty") (1934); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 529 (5th Cir. 2016) (citing *Spokeo*, 136 S. Ct. 1540), *cert. denied sub nom. Pundt v. Verizon Commc'ns, Inc.*, 137 S. Ct. 1374 (2017); *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012). Thus, even if GE did deprive plaintiffs of their statutory rights under ERISA, plaintiffs must do more to show that they suffered a concrete injury.

Second, plaintiffs argue that GE deprived them of wages or other compensation that they may have sought or received if they'd understood that the benefits they expected to receive under the plans were not as secure as GE said they were, but plaintiffs have not submitted adequate evidence of any such injury to themselves or anyone else. They merely cite an expert report that states in relevant part that "workers prepay for their benefits with lower earnings," Friedman Report, ECF No. 81-33, ¶ 18(a), and argue that "it is fair to presume" that GE would have given them higher wages or "some other thing of value" if it had honestly and clearly represented that "the benefits could go at any time," Pls.' Reply Br., ECF No. 94, at 11. This is insufficient to show that plaintiffs' wages or compensation were affected by GE's representations in SPDs. Thus, plaintiffs fail to show that these purported injuries are either concrete or particularized.

Third, plaintiffs argue that GE misrepresented the security of the plans to dissuade employees from seeking union membership, but they concede that they have

6

submitted no evidence that they or anyone else was so dissuaded. *See* Pls.' Mem., ECF No. 80, at 14–15. Thus, they fail to show that these purported injuries are either concrete or particularized.

Fourth, plaintiffs argue that GE deliberately misrepresented the terms of the plans and that such fraud is a cognizable injury redressable through plan reformation. Reformation may be available to redress fraud with respect to the terms of an ERISA plan, *see Amara*, 563 U.S. at 440–43, but plaintiffs present no evidence of fraud here,[2] so they again fail to show a concrete, particularized injury sufficient to confer standing.

Finally, plaintiffs argue that GE harmed them and enriched itself by amending and terminating the plans so they can seek to either recover for their losses or disgorge GE's gains. Whether these purported injuries amount to injury in fact, though, they are not fairly traceable to GE's fiduciary conduct with respect to the plans because "a company does not act in a fiduciary capacity when deciding to amend or terminate a welfare benefits plan." *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990), *quoted in Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

### III. CONCLUSION

Plaintiffs have not shown that they were cognizably harmed by GE's fiduciary conduct with respect to the plans, so they lack standing to sue GE for breach of its fiduciary duties under ERISA. Thus, I will grant GE's motion for summary judgment and

---

[2] I also note that where, as here, an SPD clearly states that it is subordinate to official plan documents and "'that the formal text of the plan governs,'" a plaintiff "cannot rely on the [SPD] . . . but must look to the plan itself.'" *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 821 (7th Cir. 2010) (quoting *Kolentus v. Avco Corp.*, 798 F.2d 949, 958 (7th Cir. 1986)). Such a disclaimer cuts against any inference of fraud. It also makes it much harder for plaintiffs to show, "by clear and convincing evidence," that the plans did not "reflect participants' reasonable expectations," *id.* at 819–21, but I need not address that issue as it goes to the merits of plaintiffs' claim.

deny plaintiffs' motion for same. Granting GE's motion, which it "elected to [file] . . . before [I] decided whether to certify the suit as a class action," *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995); *see also* Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment, *quoted in Costello v. Beavex, Inc.*, 810 F.3d 1045, 1058 n.3 (7th Cir. 2016), moots plaintiffs' motion for class certification, *see Cowen*, 70 F.3d at 941, so I will deny it.

**THEREFORE, IT IS ORDERED** that GE's motion for summary judgment (ECF No. 70) is **GRANTED,** plaintiffs' motion for summary judgment (ECF No. 79) is **DENIED**, and plaintiffs' motion for class certification (ECF No. 65) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of June, 2017.

/s Lynn Adelman
LYNN ADELMAN
District Judge